Blue v. Efincia Constr., LLC, 2026 NCBC 70.

STATE OF NORTH CAROLINA

MOORE COUNTY

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

24CVS000252-620

EDWARD ALLEN BLUE, individually
and derivatively on behalf of EFINCIA
COMPANIES MA, LLC, and BLUE
CONSTRUCTION CONSULTING, LLC,

Plaintiffs,

v.

EFINCIA CONSTRUCTION, LLC;
EFINCIA COMPANIES, LLC; ERIC V.
DICKINSON; and EFINCIA
COMPANIES MA, LLC,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1.    **THIS MATTER** is before the Court upon Defendants Efincia Construction,
LLC, Efincia Companies, LLC, Eric V. Dickinson, and Efincia Companies MA, LLC's
(hereinafter the "Defendants") Motion for Partial Summary Judgment pursuant to
Rule 56 of the North Carolina Rules of Civil Procedure in the above-captioned case
(the "Motion").[1]

---

[1] (Defs.' Mot. Partial Summ. J. [hereinafter "Defs.' Mot."], ECF No. 44.)

2.     Having considered the Motion, the parties' briefs in support of and in opposition to the Motion, the relevant pleadings, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **GRANTS in part and DENIES in part** Defendants' Motion as set forth below.

> *Rossabi Law PLLC, by Amiel J. Rossabi, for Plaintiffs Edward Allen Blue and Blue Construction Consulting, LLC.*
>
> *Teague, Rotenstreich, Stanaland, Fox & Holt, PLLC, by Spenser T. Smith and Robert C. Cratch, for Defendants Efincia Construction, LLC, Efincia Companies, LLC, and Eric V. Dickinson.*

Shirley, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     While the Court does not make findings of fact on a motion for summary judgment, "it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62 (2010) (citation and quotation marks omitted).  Accordingly, the following background, drawn from the undisputed evidence submitted by the parties, is intended only to provide context for the Court's analysis and ruling and not to resolve issues of material fact.

4.     Plaintiff Edward Allen Blue ("Mr. Blue") is a citizen and resident of Moore County, North Carolina.[2] Plaintiff Blue Construction Consulting, LLC ("Blue Construction") is a North Carolina limited liability company with its principal place

---

[2] (Am. Compl. ¶ 1, ECF No. 7; Defs.' Answer Am. Compl. ¶ 1, ECF No. 8 (admitting upon information and belief).)

of business in Aberdeen, Moore County, North Carolina, which Mr. Blue created in December 2017.[3] Defendants Efincia Construction, LLC ("Efincia Construction") and Efincia Companies, LLC ("Efincia Companies"), and Derivative Defendant Efincia Companies MA, LLC ("Efincia MA"), are North Carolina limited liability companies, each with its principal place of business in High Point, Guilford County, North Carolina.[4] Defendant Eric V. Dickinson ("Dickinson") is the managing member of Efincia MA and is alleged to be a citizen and resident of Davidson County, North Carolina.[5] Mr. Blue holds a five percent (5%) membership interest in Efincia MA, transferred to him by Dickinson.[6]

5.     In April 2017, Efincia Construction made a written offer of employment to Mr. Blue, which Mr. Blue accepted, for the position of Plumbing Operations Manager, at an annual salary of not less than $65,000.00.[7] The written offer also included a profit-sharing component under which Mr. Blue would receive: (a) fifteen percent (15%) of the profits derived from projects completed for and paid in full by new and

---

[3] (Am. Compl. ¶ 2; Defs.' Answer Am. Compl. ¶¶ 2, 12.)

[4] (Am. Compl. ¶¶ 3–5, 7; Defs.' Answer Am. Compl. ¶¶ 3–5, 7.)

[5] (Am. Compl. ¶ 6; Defs.' Answer Am. Compl. ¶¶ 6 (denying the allegations of paragraph six), 13 (admitting Dickinson acted "as managing member of Efincia MA, LLC").)

[6] (Am. Compl. ¶ 13; Defs.' Answer Am. Compl. ¶ 13 (admitting the conveyance of a 5% membership interest).)

[7] (Am. Compl. ¶ 11; Defs.' Answer Am. Compl. ¶ 11.)

existing Efincia Construction customers; and (b) fifty percent (50%) of the profits derived from projects solicited by, completed for, and paid in full by customers Mr. Blue brought to Efincia Construction through his own efforts (the "Employment Agreement").[8]

6. Following Mr. Blue's creation of Blue Construction in December 2017, Efincia Construction paid profits related to various jobs to Blue Construction for the benefit of Mr. Blue.[9] Plaintiffs allege that Dickinson demanded that Mr. Blue create a separate limited liability company to receive payment of Mr. Blue's profit-sharing portions of the Employment Agreement.[10]

7. Plaintiffs further allege that, in an effort to force Mr. Blue to forego his profit-sharing under the Employment Agreement, Dickinson conveyed the 5% membership interest in Efincia MA to Mr. Blue and pressured him to "re-invest" his profit-share into Efincia MA with the promise of a greater return in the future, and that Dickinson's stated plan was to purchase properties in the name of Efincia MA, use the other corporate Defendants to perform plumbing and electrical work on those

---

[8] (Am. Compl. ¶ 11; Defs.' Answer Am. Compl. ¶ 11.)

[9] (Defs.' Answer Am. Compl. ¶ 12.)

[10] (Am. Compl. ¶ 12.)

properties, and rent or sell the properties to maximize Efincia MA's profit.[11] Defendants deny these allegations.[12]

8.      Plaintiffs allege that, after Jose Arroyo resigned from Efincia Construction in or about March 2021 and left a void in the performance of electrical work, Dickinson agreed on behalf of Defendants to make Mr. Blue head of operations over all electrical work performed by or on behalf of Defendants and to compensate Mr. Blue with a fifteen percent (15%) commission for all such electrical work (the "Electrical Compensation Plan").[13] Defendants admit that Mr. Blue and Efincia Construction "engaged in conversation regarding a potential profit-sharing arrangement related to future electrical work," but deny that any agreement was reached and aver that no electrical job or contract was awarded to, contracted by, or otherwise completed by Efincia Construction between the time of that conversation and Mr. Blue's resignation, such that no profits accrued under any such arrangement.[14]

9.      Plaintiffs allege that Dickinson, exercising complete domination and control over the corporate Defendants, unfairly exploited the work of Mr. Blue and others and manipulated the financial records and the flow of money between and among the

---

[11] (Am. Compl. ¶¶ 13–14.)

[12] (Defs.' Answer Am. Compl. ¶¶ 13–14.)

[13] (Am. Compl. ¶¶ 15–16.)

[14] (Defs.' Answer Am. Compl. ¶¶ 16, 19.)

corporate Defendants in order to reduce or eliminate the value of Mr. Blue's interest in Efincia MA and the amounts owed to Mr. Blue under the Employment Agreement and the Electrical Compensation Plan (the alleged "Unfair and Deceptive Scheme").[15] Plaintiffs allege that Mr. Blue was never compensated for his profit-sharing under the Employment Agreement, never received anything under the Electrical Compensation Plan, and did not receive a greater interest in Efincia MA as a result of the purported "re-investing" of his money, and that Mr. Blue first learned of the alleged scheme in or about August 2022.[16] Defendants deny these allegations and aver that Plaintiffs have been fully compensated for all services provided to Efincia Construction.[17]

10. It is undisputed that Mr. Blue resigned his position with Efincia Construction in mid-August 2022.[18]

11. Mr. Blue and Blue Construction initiated this action by filing a Complaint in Moore County Superior Court on 19 February 2024.[19] Defendants filed their

---

[15] (Am. Compl. ¶¶ 9–10, 17–18.)

[16] (Am. Compl. ¶¶ 19–20.)

[17] (Defs.' Answer Am. Compl. ¶¶ 9–10, 17–20, 27, 38.)

[18] (Am. Compl. ¶ 22 (alleging resignation effective 18 August 2022); Defs.' Answer Am. Compl. ¶ 22 (admitting Mr. Blue worked for Efincia Construction "until he resigned on August 19, 2022").)

[19] (Compl., ECF No. 3.)

Answer and Counterclaim on 15 May 2024, and Plaintiffs filed their Reply to Counterclaim on 18 July 2024.[20]

12. On 16 September 2024, Plaintiffs—Mr. Blue, individually and derivatively on behalf of Efincia MA, and Blue Construction—filed the operative Amended Complaint, asserting eight claims for relief: (i) violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.* (First Claim); (ii) breach of contract (Second Claim); (iii) *quantum meruit* (Third Claim); (iv) unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes (Fourth Claim); and, derivatively on behalf of Efincia MA against Dickinson, claims for (v) conversion (Fifth Claim); (vi) embezzlement (Sixth Claim); (vii) breach of fiduciary duty (Seventh Claim); and (viii) in the alternative, unjust enrichment (Eighth Claim) (the Fifth through Eighth Claims, collectively, the "Derivative Claims").[21]

13. Defendants filed their Answer to the Amended Complaint on 25 October 2024, asserting affirmative defenses and two counterclaims—one for tortious interference with the employment contracts of three Efincia Construction employees and one for conversion and/or trespass to chattels concerning company property—and requesting a written statement of the amount of monetary relief sought pursuant to Rule 8(a)(2) of the North Carolina Rules of Civil Procedure.[22]

---

[20] (Answer & Countercl., ECF No. 5; Reply Countercl., ECF No. 6.)

[21] (Am. Compl., ECF No. 7.)

[22] (Defs.' Answer Am. Compl., ECF No. 8.)

14. Following Defendants' filing of a Notice of Designation on 25 October 2024, this action was designated a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina and assigned to the Honorable Louis A. Bledsoe III on 29 October 2024.[23]

15. Plaintiffs filed their Reply to Counterclaims on 20 December 2024, denying the material allegations of the counterclaims and asserting the defenses of duress, estoppel, fraud, illegality, and waiver.[24]

16. On 15 January 2026, Defendants filed the Motion, together with a supporting memorandum, seeking summary judgment on Plaintiffs' First, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief on the grounds that: (1) the Derivative Claims fail as a matter of law because Plaintiffs lack standing due to their failure to comply with the applicable demand requirements of N.C. Gen. Stat. § 57D-8-01; (2) the North Carolina Wage and Hour Act is inapplicable to Plaintiffs' claimed profits; and (3) the record contains no substantially aggravating factors sufficient to support a claim under Chapter 75.[25]

17. On 26 February 2026, Plaintiffs filed a Notice of Partial Voluntary Dismissal pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure, voluntarily dismissing without prejudice the Derivative Claims—i.e., the Fifth, Sixth, Seventh,

---

[23] (Not. Designation, ECF No. 9; Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

[24] (Pls.' Reply Countercls., ECF No. 16.)

[25] (Defs.' Mot. 1–2; Defs.' Mem. Supp. Mot. Partial Summ. J. [hereinafter "Defs.' Mem."], ECF No. 45.)

and Eighth Claims for Relief of the Amended Complaint—while expressly preserving all other claims asserted in the Amended Complaint.[26]

18.     This action was reassigned to the undersigned on 4 March 2026.[27]

19.     After full briefing, the Court held a hearing on the Motion on 29 April 2026, at which all parties were represented by counsel (the "Hearing").[28] The Motion is now ripe for resolution.

II.

LEGAL STANDARD

20.     Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must consider the evidence in the light most favorable to the nonmoving party, drawing all inferences in the nonmoving party's favor.  *See, e.g.*, *Morrell v. Hardin Creek, Inc.,* 371 N.C. 672, 680 (2018).

21.     The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002).  If the moving party carries this burden, the opposing party "may not rest

---

[26] (Not. Partial Voluntary Dismissal, ECF No. 51.)

[27] (Reassignment Order, ECF No. 55.)

[28] (Not. Hr'g, ECF No. 58.)

upon the mere allegations or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins.,* 356 N.C. at 579. "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369 (1982) (quoting *Bone Int'l, Inc. v. Brooks*, 304 N.C. 371, 374–75 (1981)).

22. "When the party with the burden of proof moves for summary judgment, a greater burden must be met." *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578 (1985). The moving party "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985); *see also Kidd v. Early*, 289 N.C. 343, 370 (1976). However, when a party moves for summary judgment on a claim and properly supports all the essential elements of that claim with evidence, and it plainly appears from the pleadings and evidence presented that the movant is entitled to recover on the claim, summary judgment is proper. N.C. R. Civ. P. 56(c); *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984).

III.

ANALYSIS

*The Derivative Claims in Defendants' Motion are Moot*

23. Defendants first seek summary judgment dismissing the Fifth through Eighth Claims for Relief, the Derivative Claims asserted on behalf of Efincia MA, on the ground that Mr. Blue failed to comply with the pre-suit demand requirements of N.C. Gen. Stat. § 57D-8-01(a)(2) and therefore lacks standing to maintain them.[29] After the Motion was filed, however, Plaintiffs filed a Notice of Partial Voluntary Dismissal pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure, dismissing each of the Derivative Claims without prejudice.[30] Plaintiffs' Response confirms that, in light of that dismissal, Plaintiffs' opposition is limited to the First and Fourth Claims for Relief.[31]

24. Because the Derivative Claims are no longer pending, the portions of the Motion seeking their dismissal no longer present a live controversy, and the Court does not reach Defendants' demand-requirement and standing arguments. Those portions of the Motion are **DENIED as moot**.

---

[29] (Defs.' Mem. Supp. Mot. Partial Summ. J. 8–12 [hereinafter "Defs.' Mem."], ECF No. 45.)

[30] (Not. Partial Voluntary Dismissal, ECF No. 51.)

[31] (Pls.' Resp. 1.)

*Defendants Are Entitled to Summary Judgment on the First Claim for Relief*

25.    Defendants present three grounds for summary judgment on the First Claim for recovery under the North Carolina Wage and Hour Act: (i) Blue Construction, a limited liability company, is not an "employee" within the meaning of the Act; (ii) the profit-sharing payments at issue are not "wages"; and (iii) in any event, recovery for projects completed more than two years before the filing of the Complaint is barred by the Act's two-year statute of limitations.[32] Plaintiffs respond that the Wage Claim is asserted solely by Mr. Blue, that the promised profits are wages as a matter of law, and that the statute of limitations presents contested issues of fact.[33]

*First Ground*

26.    The first ground requires little discussion. The Act defines an "employee" as "any individual employed by an employer," N.C. Gen. Stat. § 95-25.2(4), and a limited liability company is not an "individual" capable of maintaining a claim under the Act. *See Jessey Sports, LLC v. Intercollegiate Men's Lacrosse Coaches Ass'n, Inc.*, 289 N.C. App. 166, 170 (2023). Plaintiffs do not contend otherwise; they expressly concede that the First Claim "belongs solely to Mr. Blue" and that Blue Construction neither

---

[32] (Defs.' Mem. 12–18.)

[33] (Pls.' Resp. 5–19.)

claims to be an "employee" nor seeks any recovery under the Act.[34] Accordingly, to the extent the First Claim could be construed as asserted by Blue Construction, Defendants are entitled to judgment as a matter of law, and the Court analyzes the claim as belonging to Mr. Blue alone.

*Second Ground*

27. The dispositive question raised by the second ground for Defendants' motion is whether the profit-sharing payments contemplated by the Second Offer Letter constitute "wages" owed to Mr. Blue. The Act defines a "wage" as "compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation," and provides that, for purposes of the Act's wage-payment provisions, "'wage' includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C. Gen. Stat. § 95-25.2(16). Whether compensation has been earned, and on what terms, is determined by the parties' employment agreement. *See Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 227–28 (2010); *Murphy v. First Union Cap. Mkts. Corp.*, 152 N.C. App. 205, 209 (2002).

28. The following facts material to that question are undisputed. Mr. Blue accepted employment on the terms of the Second Offer Letter, which provided a salaried position at $70,000 per year together with "a profit sharing plan of 15% of

---

[34] (Pls.' Resp. 5–6.)

the profits of new and existing customers developed by current management" and "50% of the profits of customers/projects that you bring to the company."[35] In December 2017, Mr. Blue organized Blue Construction, of which he is the sole member, for the purpose of receiving the profit-sharing payments.[36] For the duration of the parties' relationship, every profit-sharing payment was made by Efincia Construction to Blue Construction, not to Mr. Blue, by check (with a final payment by wire on or about 11 August 2022), and was reported to taxing authorities on a Form 1099 as nonemployee compensation.[37] Blue Construction received approximately $200,000 in profit-sharing payments under this arrangement.[38] Mr. Blue's annual salary, by contrast, was at all times paid to him personally by direct deposit, reported on a Form W-2, and subject to ordinary payroll withholdings, and was paid in full and without interruption through his resignation.[39]

---

[35] (Second Offer Letter, Defs.' Mem. Ex. 6, ECF No. 45; Pls.' Resp. Ex. A, ECF No. 54.1.)

[36] (Blue Dep. 75:13–76:9, 77:9–11, 78:15–24, Defs.' Mem. Ex. 3, ECF No. 45; Articles of Organization, Defs.' Mem. Ex. 8.)

[37] (Blue Dep. 131:11–21; Tax Documents for Blue and Blue Construction, Defs.' Mem. Ex. 12 (Schedule C gross receipts for Blue Construction); *see also* Pls.' Resp. 3 (acknowledging that "any profit bonuses that were paid to Mr. Blue [were paid] via Blue Construction").)

[38] (Defs.' Mem. Ex. 12 (Schedule C gross receipts).)

[39] (Blue Dep. 98:13–22.)

29.     On this undisputed record, the Court concludes that the profit-sharing payments were not "wages" within the meaning of N.C. Gen. Stat. § 95-25.2(16). The statutory definition reaches "compensation for labor or services rendered by an employee." For more than five years, and by the parties' mutual and consistent course of dealing, the profit-sharing payments were made to, received by, accepted by, and reported as the nonemployee compensation of a separate legal entity that Mr. Blue himself organized for that very purpose, while the parties simultaneously maintained a conventional employee wage relationship, with full payroll treatment, as to Mr. Blue's salary. The contrast between the parties' sustained treatment of the two payment streams is competent, undisputed evidence of their character.

30.     The Business Court's decision in *Maurer v. SlickEdit, Inc.* is instructive, though it points in the opposite direction from the one Plaintiffs urge. In *Maurer*, the court looked to the parties' conduct over the course of the employment relationship. Specifically, the court evaluated the employer's consistent reporting of bonus payments as W-2 wages with Social Security and Medicare withholdings and refused to permit the employer's post-hoc "about-face" recharacterization of those payments. *Maurer v. SlickEdit, Inc.,* 2006 NCBC LEXIS 1, at *32 (N.C. Super. Feb. 3, 2006). The same conduct-based analysis applied here yields the opposite result: the parties consistently treated the profit-sharing payments as the nonemployee compensation of Blue Construction, and Mr. Blue, who structured, accepted, and enjoyed the benefits of that arrangement for five years, now seeks the post-separation about-face.

*Maurer*'s logic does not permit either party to recharacterize a payment stream after years of mutual contrary treatment.[40]

31. Plaintiffs' remaining arguments are not persuasive. First, the inclusion of "bonuses" within the second sentence of § 95-25.2(16) does not eliminate the definitional requirement that a wage be compensation for labor or services "rendered by an employee"; it is precisely that requirement the undisputed record forecloses here. Second, the "economic realities" and right-of-control authorities on which Plaintiffs rely address whether a worker has been misclassified as an independent contractor rather than an employee. *See, e.g., Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304–06 (4th Cir. 2006); *McCown v. Hines*, 140 N.C. App. 440, 443 (2000), *aff'd*, 353 N.C. 683 (2001). Those authorities are not pertinent where, as here, Mr. Blue's status as an employee with respect to his salary is undisputed, and the question is instead the character of a distinct payment stream that the employee directed be made by the employer to his own limited liability company. Third, while North Carolina law permits a plaintiff to plead alternative and even inconsistent theories, *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419 (2006), alternative pleading does not relieve a nonmovant at summary judgment of the obligation to come forward with specific facts supporting each essential element of the claim under review, *Liberty Mut. Ins.*, 356 N.C. at 579.

---

[40] Plaintiffs' contention that the arrangement was adopted at Dickinson's suggestion, (Pls.' Resp. 3 (citing Dickinson Dep. Part Two 139–40, ECF No. 52.3)), does not alter the analysis; Mr. Blue conceded at his deposition that he formed Blue Construction voluntarily. (Blue Dep. 75:13–76:9, Defs.' Mem. Ex. 3.)

32. For the same reasons, Plaintiffs' request that the Court enter partial summary judgment in Mr. Blue's favor on liability under the Act is **DENIED**. Plaintiffs' request, and the forfeiture-notice framework of N.C. Gen. Stat. §§ 95-25.7 and 95-25.13 on which it principally rests,[41] presupposes that the profit-sharing payments are "wages" subject to the Act. Because the Court has concluded they are not, the Act's payment, withholding, and forfeiture provisions are not implicated. The Court emphasizes, however, the limits of this holding: the Motion does not challenge, and this Order does not adjudicate Mr. Blue's Second Claim for Relief for breach of contract or Plaintiffs' Third Claim for Relief in *quantum meruit*. Whether Defendants breached the Second Offer Letter by failing to pay profit-sharing amounts owed remains squarely for trial on those claims.

*Third Ground*

33. The Court does not reach Defendants' third ground, that recovery for projects completed more than two years before the Complaint was filed is barred by the Act's two-year statute of limitations, because the profit-sharing payments are not wages subject to the Act.

34. Defendants' Motion is therefore **GRANTED** as to the First Claim for Relief, and that claim is **DISMISSED with prejudice**.

---

[41] (Pls.' Resp. 24–27.)

*Defendants Are Entitled to Summary Judgment on the Fourth Claim for Relief*

35. To prevail on a claim for unfair or deceptive trade practices, a plaintiff must show "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001). Two settled limiting principles frame the claim here. First, "employer-employee relationships do not fall within the intended scope of" Chapter 75. *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448 (1982); *accord Dalton*, 353 N.C. at 655–58. Second, "a mere breach of contract, even if intentional," cannot sustain a Chapter 75 claim absent "substantial aggravating circumstances attending the breach." *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217 (2007) (citation omitted); *see Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). The conduct found sufficiently aggravating "has generally involved forged documents, lies, and fraudulent inducements." *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013).

36. Plaintiffs' Response clarifies the posture of the Fourth Claim: it "belongs solely to Plaintiff Blue Construction as an alternative claim," asserted against the contingency that the right to the profit-sharing payments is ultimately held to belong to Blue Construction rather than to Mr. Blue as employment compensation.[42] That

---

[42] (Pls.' Resp. 19–20.) Plaintiffs acknowledge that the Trade Practice Claim is "legally inconsistent" with the Wage Claim under *Buie* and that it "should properly be dismissed" in the event of recovery under the Act. (Pls.' Resp. 19.))

clarification narrows the analysis. To the extent the claim rests on Defendants' treatment of Mr. Blue in connection with his employment, including the compensation promised to him by the Second Offer Letter, it falls outside the scope of Chapter 75 under *Buie* and *Dalton*. To the extent the claim belongs to Blue Construction as a contracting party, it is a contract dispute over the calculation and payment of amounts due under the profit-sharing arrangement, and it therefore requires a forecast of substantially aggravating circumstances.

37.     Viewed in the light most favorable to Plaintiffs, the forecast evidence does not clear that bar. Plaintiffs point to evidence that Dickinson reduced the calculated "profits" by undisclosed indirect-overhead allocations, including his own salary and expenses associated with unbilled personal work;[43] that Efincia Construction's records of amounts owed contain errors, discrepancies, and "deceptive omissions," supporting an inference of manipulated books and an underpayment of "at least $643,870.00";[44] and that Dickinson withdrew substantial and largely unexplained sums, by his own testimony, between "zero and three million dollars," from the company at a time when, according to Plaintiffs, Defendants attributed nonpayment to inadequate cash flow.[45] Accepting all of this as true, it describes the manner in which Defendants calculated, delayed, justified, and ultimately withheld payments

---

[43] (Dickinson Dep. 50, 152, 159–65, 283, ECF No. 52.2; Dickinson Dep. Part Two 28, 63, ECF No. 52.3.)

[44] (Aff. Melony Kiser ¶¶ 2, 11, 16–18 & Exs. A–D, ECF No. 53.)

[45] (Dickinson Dep. Part Two 108-19, ECF No. 52.3; Pls.' Resp. 21-24.)

allegedly owed under the profit-sharing arrangement: that is, conduct in the performance and breach of the contract itself. North Carolina law is clear that an intentional breach, even one undertaken in bad faith or accompanied by deception in the course of performance, does not constitute an unfair or deceptive trade practice absent aggravating circumstances of the inducement variety—"forged documents, lies, and fraudulent inducements" that deceive a party into the transaction. *Stack*, 979 F. Supp. 2d at 668; *see Griffith*, 184 N.C. App. at 217. Plaintiffs forecast no evidence that Blue Construction was fraudulently induced to enter the profit-sharing arrangement or to continue performing under it based on any misrepresentation independent of the alleged breach. The remedy for the conduct Plaintiffs describe sounds in contract, and Plaintiffs' breach of contract claim remains for trial.

38. Nor do Plaintiffs' allegations concerning Efincia MA supply the missing aggravation. The undisputed evidence is that Mr. Blue's 5% membership interest in Efincia MA was a gift for which he paid no consideration and made no capital contribution, and Plaintiffs forecast no evidence that Mr. Blue was promised, or that any identifiable funds of his were "re-invested" toward, a greater interest in that entity.[46]

39. Defendants' Motion is therefore **GRANTED** as to the Fourth Claim for Relief, and that claim is **DISMISSED with prejudice**.

---

[46] (Dickinson Dep. Part One 83:14–85:3, 260:18–261:5, Defs.' Mem. Ex. 1, ECF No. 45; 2023 Tax Return for Efincia Companies MA, LLC, Defs.' Mem. Ex. 10; Defs.' Mem. 21.)

IV.

CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** Defendants' Motion for Partial Summary Judgment as follows:

a.      The Motion is **GRANTED** as to Plaintiffs' First Claim for Relief (Violation of the North Carolina Wage and Hour Act), and that claim is **DISMISSED with prejudice**;

b.      The Motion is **GRANTED** as to Plaintiffs' Fourth Claim for Relief (Chapter 75), and that claim is **DISMISSED with prejudice**;

c.      The Motion is **DENIED as moot** as to Plaintiffs' Fifth, Sixth, Seventh, and Eighth Claims for Relief, which Plaintiffs voluntarily dismissed without prejudice on 26 February 2026;

d.      Plaintiffs' request for entry of partial summary judgment in their favor is **DENIED**; and

e.      Plaintiffs' Second Claim for Relief (Breach of Contract) and Third Claim for Relief (*Quantum Meruit*), and Defendants' Counterclaims, remain pending and shall proceed to trial.

**SO ORDERED**, this the 30th day of July 2026.

/s/ A. Graham Shirley
A. Graham Shirley
Special Superior Court Judge
 for Complex Business Cases